UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

KANEN FLOWERS,

Defendant.

**MEMORANDUM AND ORDER**
Case No. 24-CR-458 (FB)

*Appearances:*

*For the United States:*
TARA BRIGIT MCGRATH
JAMES R. SIMMONS
United States Department of Justice
United States Attorney's Office, Eastern
District of New York
271-A Cadman Plaza East
Brooklyn, NY 11201

*For the Defendant*
FLORIAN MIEDEL
52 Duane Street
Ste 7th Floor
New York, NY 10007

**BLOCK, Senior District Judge:**

Kanen Flowers was indicted by a grand jury on November 12, 2024, for charges including securities fraud, wire fraud, and money laundering. The indictment arose from Flowers' management of a hedge fund, Next Alpha Fund, Ltd. (the "Fund"), from which he is alleged to have misappropriated investors' money between November 2020 and April 2023. Following his indictment, two warrants were authorized by magistrate judges and executed by law enforcement, one in Arizona and one in Nevada. Flowers now moves to suppress the fruits of these search warrants. In the alternative, he seeks a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The Court held oral argument on the motion on March 20, 2026. For the following reasons the motion is DENIED in its entirety.

On November 13, 2024, Magistrate Judge Bruce G. MacDonald of the District of Arizona issued a warrant for a one-bedroom vacation home in Arizona and the defendant's person (the

"Arizona Warrant"). *See* Def.'s Ex. A, ECF No. 50-1. The Arizona Warrant authorized a search of the premises for "evidence, fruits and instrumentalities of [the Subject Offenses] involving FLOWERS from the time period January 1, 2018 to the present." *Id.* In support of the warrant, FBI Special Agent Conor O'Shea submitted a sworn affidavit which stated: "On or about November 12, 2024, a grand jury sitting in the Eastern District of New York returned a four-count indictment against FLOWERS, charging him with the Subject Offenses between November 2018 through April 2023." *See* Def.'s Ex. B, ¶ 5, ECF No. 50-2. However, this portion of the affidavit was factually incorrect: the Subject Offenses described in the indictment occurred between 2020 and April 2023.

Despite this error, the Affidavit also described how, between 2018 and 2020, Flowers managed a hedge fund called Katsu Fund Ltd. (the "Prior Fund") and how his management of the Prior Fund was connected to his management of the Fund (i.e. the conduct giving rise to the Subject Offenses). Specifically, the Affidavit claimed that Flowers emailed the Prior Fund's investors on November 30, 2020, to tell them that the Prior Fund was dissolving and inviting them to reinvest in the Fund. *Id.* at ¶ 12a. Furthermore, it attested to the fact that the Fund had become operational on or about March 1, 2021, with six investors, all of whom rolled their investments over from the Prior Fund. *Id.* at ¶ 12b. Flowers evidently told these investors that other investors had already transferred funds into the Fund, which was untrue. *Id.* at ¶ 12a. Lastly, the Affidavit affirmed that Flowers repeatedly told investors that he had more than a billion dollars under management between 2018 and 2020, when in reality he never managed more than $3.5 million. *Id.* at ¶ 12c.

Flowers moves to suppress the Arizona Warrant based on the incorrect dating of the Subject Offenses, arguing that the time period described in the Affidavit and Warrant was overbroad and that there was no probable cause for the seizing of items and electronic records from before 2020. The Government contends that while the Affidavit may have misstated the

2

time period of the Subject Offenses, it nonetheless established that evidence about the Prior Fund was likely to yield evidence, fruits, and instrumentalities of the Subject Offenses.

The Court agrees with the Government's view of the matter. The Affidavit provides sufficient support for the relevance of Flowers' electronic records from 2018 to 2020. The Fund's investors were rolled over from the Prior Fund, so evidence relating to what Flowers said to the Investors between 2018 and 2020, and what assets he had under management at that time, is likely to yield evidence of the Subject Offenses. Furthermore, if Flowers perpetuated his fraud by lying about what he had done as manager of the Prior Fund then records from that time period are clearly relevant to the investigation of his management of the Fund. The warrant's inclusion of the 2018 to 2020 time period is therefore supported by probable cause and suppression is inappropriate.

The Nevada Warrant is much more troubling. On November 14, 2024, Magistrate Judge Daniel J. Albregts of the District of Nevada signed a warrant authorizing the search of a one-bedroom apartment in Las Vegas, Nevada (the "Nevada Warrant"). *See* Def.'s Ex. C, ECF No. 50-3. This warrant contained the same dating problem as the Arizona Warrant—which is insufficient to warrant suppression for the same reasons described above—but also contained an improperly copy-and-pasted portion of a different warrant from a different case. Specifically, the section "THINGS TO BE SEIZED" featured an illustrative list of items pertaining to a narcotics case and narcotics offenses involving a third party. Some of these "things to be seized" were the same as those found in the list intended for the warrant (e.g. "[d]igitally stored records" and "[p]asswords [and] encryption keys") and some were obviously erroneous and irrelevant to the Subject Offenses (e.g. "[a]ny information related to sources of drugs"). *Id.*

Flowers contends that these deficiencies are so glaring as to demonstrate that Magistrate Judge Albregts abandoned his judicial role and "rubber stamped" the warrant. Because of this failure of judicial duty, he argues the good faith exception should not apply and the warrant must

3

be suppressed. Under *United States v. Leon*, 468 U.S. 897 (1984), suppression is appropriate where (1) "the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "the issuing magistrate wholly abandoned his judicial role" and instead served "merely as a rubber stamp for the police"; (3) the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.* at 914, 923. As explained below, none of these circumstances are present and the warrant therefore will not be suppressed.

In order to fall within the first *Leon* factor the inaccuracy must be both material to the probable cause finding and the result of the affiant's deliberate falsehood or reckless disregard of the truth. *Franks*, 438 U.S. at 171–172. Here, there is no indication that the affiant misled the Magistrate Judge and no suggestion that the Magistrate Judge relied on the improperly copy-and-pasted section in making the probable cause determination. The error is clearly a product of typographical sloppiness, which does not rise to the level of "reckless disregard of the truth." The first factor is therefore not satisfied.

As to the second factor, the Magistrate Judge may have made a serious mistake in failing to closely read the warrant and failing to notice the copy-paste error, but that does not mean that he abandoned his role. As the Supreme Court made clear in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979), such abandonment only occurs when the Magistrate Judge ceases to act "as a judicial officer" and instead assumes the role of "an adjunct law enforcement officer." Id. at 327. A failure to pay close attention does not make a judge into a police officer, and this factor therefore does not encompass the situation at hand.

As to the third and fourth factors, there is sufficient probable cause to support the warrant and the warrant is not "facially deficient." A warrant is facially deficient where it fails "to

4

particularize the place to be searched or the things to be seized." *Leon*, 468 U.S. at 923. Here, the warrant clearly particularized the places to be searched and to be seized, it just also accidentally included a list of the wrong evidence from the wrong case. Any reasonable officer would have recognized that the evidence related to drug trafficking was erroneously included in the warrant and would not have relied on that section when executing the warrant.

Therefore none of the *Leon* factors apply under the present circumstances and the Court will not suppress the Nevada Warrant. However, the Court acknowledges the troubling nature of the copy-and-paste error here and will order that the infirm portion of the Nevada Warrant (specifically, pages 8:20–11:24) be severed. "When a warrant is severed . . . [,] the constitutionally infirm portion . . . is separated from the remainder and evidence seized pursuant to that portion is suppressed; evidence seized under the valid portion may be admitted." *United States v. George*, 975 F.2d 72, 79 (2d Cir. 1992).

At oral argument, defense counsel highlighted that the warrant's proper list of things to be seized, and the improperly included (and now severed) section, both described similar electronic devices and records. Counsel suggested that because of this overlap, "we don't really know when the arresting or the searching agents went into the premises on which basis they were seizing the devices." Tr. 13 at 1-4. That is, we don't know whether the agents were relying on the proper or improper warrant sections when they seized electronic devices. However, as I observed during argument, life is full of unknowable mysteries, the majority of which do not justify the suppression of warrants. Without a showing of bad faith, reckless disregard of the truth, the abdication of judicial duties, or the absence of probable cause, there is no basis to suppress the warrant. However, should it become clear that any evidence was improperly seized pursuant to this now severed portion of the warrant the Court will promptly order that evidence suppressed.

In the alternative, Flowers requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). To warrant a Franks hearing, "a defendant must make a substantial preliminary

5

showing that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998). Here there is no indication that the affiant had a reckless disregard for the truth. Despite their errors, the affidavits contains sufficient basis for probable cause. The errors were just that, errors, and in no way necessary to the judge's probable cause finding. Had the affidavits and warrants contained all the correct information the Magistrate Judges would certainly still have authorized the very same searches. Accordingly, a Franks hearing is not required here.

For the foregoing reasons the motion to suppress is DENIED.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 16, 2026